**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 21-cv-02191-REB-NYW

ACHELEKE FUANYA,

      Plaintiff,

v.

UNITED STATES,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE OR,
IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE**

---

Blackburn, J.

The matter before me is **Defendant's Motion To Transfer Venue or, in the Alterative, To Dismiss for Improper Venue** [#21],[1] filed November 30, 2021.  I deny the motion.

## I.  JURISDICTION

I have subject matter jurisdiction of this matter pursuant to 28 U.S.C. §1346(b) (Federal Tort Claims Act).

## II.  STANDARD OF REVIEW

A motion to dismiss for improper venue under Rule 12(b)(3) is analyzed under the same standards governing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  *H & H Transformer, Inc. v. Battelle Energy Alliance, LLC*, 2009 WL

---

[1]  "[#21]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

3530370 at *3 (D. Colo. Oct. 23, 2009).  Accordingly, the allegations of the complaint are accepted as true to the extent they are uncontroverted, and any factual disputes are to be resolved in favor of the plaintiff.[2]  *Hancock v. AT & T Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012), *cert. denied*, 133 S.Ct. 2009 (2013); *Wenz v. Memmery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Once the plaintiff makes a prime facie showing that venue is proper in the chosen district, *Scott v. Buckner Co.*, 388 F.Supp.3d 1320, 1324 (D. Colo. 2019), that "showing is sufficient notwithstanding the contrary presentation by the moving party," *Behagen v. Amateur Basketball Association*, 744 F.3d 731, 733 (10th Cir. 1984).

"[D]etermination of proper venue does not require the court to choose the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims." *Scott*, 388 F.Supp.3d at 1324 (citation and internal quotation marks omitted).  "[U]nless the balance is strongly in favor of the [defendant], the plaintiff's choice of forum should rarely be disturbed."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). Where venue in the filing district is found to be improper, the court "shall dismiss, or if it be in the interest of justice, transfer such a case" to a district in which venue properly lies.  28 U.S.C. § 1406(a).  The decision whether to dismiss or transfer the case is committed to the court's sound discretion.  *Keaveney v. Larimer*, 2000 WL 1853994 at *1 (10th Cir. Dec. 19, 2000).

Alternatively, section 1404(a) contemplates that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil

---

[2]  In this case, the allegations of the complaint are uncontested.

2

action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The district court is vested with considerable discretion in determining whether transfer is appropriate under this section.  ***Chrysler Credit Corp. v. Country Chrysler, Inc.***, 928 F.2d 1509, 1515 (10th Cir. 1991).  The movant bears the burden of establishing that the existing forum is sufficiently inconvenient to warrant transfer.  ***Id***. This is a heavy burden, ***Texas Gulf Sulphur Co. v. Ritter***, 371 F.2d 145, 148 (10th Cir. 1967), "and unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed," ***Scheidt***, 956 F.2d at 965.   ***See also Cargill Inc. v. Prudential Insurance Co. of America***, 920 F.Supp. 144, 146 (D. Colo. 1996).

### III.  ANALYSIS

Plaintiff, Acheleke Fuanya, a citizen of Cameroon, fled that country in 2019, seeking political asylum in this country.  After presenting himself to U.S. Customs and Border Protection ("CBP") at the port of entry at San Ysidro, Mr. Fuanya was transferred to the custody of Immigration and Customs Enforcement ("ICE") at the Winfield Correctional Center in Louisiana.  Mr. Fuanya claims that while there, on January 14, 2021, five ICE officials assaulted him after he declined to affix his signature and fingerprint to a document without first consulting his attorney.  He alleges he continues to suffer severe pain from injuries sustained during the attack and has been diagnosed with post-traumatic stress disorder related to the incident.  In addition, he contends he contracted COVID-19 from the unmasked ICE officials, from which he continues to suffer lingering symptoms.

Mr. Fuanya was released subsequently from ICE custody and went to live with his sister and brother-in-law in Colorado Springs, Colorado.  He received an employment authorization from the Department of Homeland Security ("DHS") on October 7, 2021, and a social security number and card the following day, and has been working since November 2021.  (**Resp. App.**, Exh. 1 ¶¶ 5-6 at 1; ***see also id.***, Exhs. 2 & 3.)  Mr. Fuanya's application for asylum was denied both initially and by the Board of Immigration Appeals and is now pending before the United States Court of Appeals for Fifth Circuit.

By this suit, Mr. Fuanya brings claims against the government under Louisiana law pursuant to the Federal Tort Claims Act ("FTCA") for battery, intentional infliction of emotional distress, and negligence.  The government moves to dismiss for improper venue, or alternatively to transfer the case to the Western District of Louisiana.  As have the majority of courts which have considered similar arguments directly, I reject the government's argument that the only proper venue in this case is where this incident occurred because, as an alien not yet granted asylum or some other permanent status, Ms. Fuanya cannot claim to reside in Colorado.  I also decline the government's invitation to transfer this case under section 1404(a).

To begin, the motion implicates the venue provisions of the FTCA, which provides, relevantly, that "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C.A. § 1402(b).  As all the acts implicated by this lawsuit plainly occurred in Louisiana, the pivotal question is whether Mr. Fuanya resides in Colorado.

While section 1402(b) itself does not define "residence," the general venue statute does, and courts have looked to this statute in interpreting the venue provision of the FTCA.  *See* 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. JURIS. § 3814 & n.17 (4th ed.); *Alvarado v. United States*, 2017 WL 2303758 at *2 (D.N.J. May 25, 2017).  *See also Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479, 112 S.Ct. 2589, 2596 120 L.Ed.2d 379 (1992) (noting the "basic canon of statutory construction that identical terms within an Act bear the same meaning"). Under that statute, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled."  28 U.S.C. § 1391(c)(1).  "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989).  *See also Keys Youth Services, Inc. v. City of Olathe, Kansas*, 248 F.3d 1267, 1272 (10th Cir. 2001).

At first blush, the venue analysis would seem quite straightforward:  if Mr. Fuanya, clearly a "natural person," can establish he is domiciled in Colorado – that is, that he has an intent to remain here – venue would lie in this district.  Nevertheless, the government insists the statute must be read more narrowly in light of its historical interpretation.

This argument begins by noting that prior to 2011, section 1391(c)(1), did not include the proviso "including an alien lawfully admitted for permanent residence in the United States," and had been interpreted "to deny venue to aliens, holding that for

purposes of venue, aliens are not residents of any district despite where they might live." *See Arevalo-Franco v. U.S. Immigration and Naturalization Service*, 889 F.2d 589, 590 (5th Cir. 1989) (citing *Galveston H. & S.A.R. Co. v. Gonzales*, 151 U.S. 496, 14 S.Ct. 401, 38 L.Ed. 248 (1894), and *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir.1983)).[3]  Congress subsequently added the clause "including an alien lawfully admitted for permanent residence in the United States" to section 1391(c)(1) as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat.758 (Dec. 7, 2011).  Pointing to the principle that Congress is presumed to legislate in light of existing precedents, *see Board of County Commissioners, Fremont County, Colorado v. United States Equal Employment Opportunity Commission*, 405 F.3d 840, 845 (10th Cir. 2005), the government posits that the phrase "including an alien lawfully admitted for permanent residence in the United States" was intended to limit the class of possible alien domiciliaries to *only* legal permanent residents.

The overwhelming majority of federal district courts which have considered the question directly ultimately have rejected this argument, albeit on divergent grounds.[4] Some have relied on the plain language of the statute.  *See Alvarado*, 2017 WL 2303758 at *2; *Flores v. United States*, 108 F.Supp.3d 126, 131 (E.D.N.Y. 2015).

---

[3]  Nevertheless, courts still recognized exceptions to this general rule in specific circumstances. *See Arevalo–Franco*, 889 F.2d at 590–91 (alien may file FOIA action in district where he lives, without regard to legal residence status); *Williams v. United States*, 704 F.2d 1222, 1226-27 (11th Cir.1983) (resident alien, as defined in Treasury Regulations, may establish venue for challenge to IRS jeopardy assessment).

[4]  The lone exception, *Najera v. United States*, 2016 WL 6877069 (E.D. Va. Nov. 22, 2016), gave only glancing consideration to the plaintiff's arguments in support of venue and is readily distinguishable on its facts in any event.  *See infra*, n.10.

Others have concluded the statute is sufficiently ambiguous to warrant an excursion into the legislative history. ***Coyoy v. United States***, 526 F.Supp.3d 30, 35-36 (D.N.J. 2021); ***Luna v. United States***, 2021 WL 673534 at *1-2 (W.D. Wash. Feb. 22, 2021). Under either line of reasoning, these courts have reached the same conclusion: in amending the general venue statute, Congress intended to extend venue to any alien who can establish he has an intent to remain in this country which is lawful under immigration law. I agree.

Looking first at the language of the statute, the government's proposed interpretation essentially asks the court to apply the canon of *expressio unius est exclusio alterius*, under which "to express or include one thing implies the exclusion of the other, or of the alternative." ***United States v. Porter***, 745 F.3d 1035, 1046 (10th Cir. 2014) (citation and internal quotation marks omitted).[5] The very use of the term "including" indicates otherwise. In statutory construction, "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." ***Federal Land Bank of St. Paul v. Bismarck Lumber Co.***, 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941). ***See also Samantar v. Yousuf***, 560 U.S. 305, 317, 130 S.Ct. 2278, 2288, 176 L.Ed.2d 1047 (2010) ("[T]he word 'includes' is usually a term

---

[5] On the other hand, under the law of this circuit, this is not an instance in which the doctrine of *noscitur a sociis*, also known as the "associated words canon," may be invoked, as it applies only where the statute contains a list of more than one example. ***See In re McDaniel***, 973 F.3d 1083, 1103 (10th Cir. 2020). ***See also Graham County Soil & Water Conservation District v. United States ex rel. Wilson***, 559 U.S. 280, 287, 130 S.Ct. 1396, 1402, 176 L.Ed.2d 225 (2010) ("This maxim, literally translated as 'it is known by its associates,' counsels lawyers reading statutes that 'a word may be known by the company it keeps.") (internal citations omitted). ***Cf. Coyoy***, 526 F.Supp.3d at 37 (applying canon and concluding it requires person's domicile to be lawful even is not full legal permanent resident or citizenship status).

of enlargement, and not of limitation.") (citation and quotation marks omitted).[6]  Here, the general principle set forth in the statute is that a natural person may bring suit in the venue of his domicile.  *See Alvarado*, 2017 WL 2303758 at *2; *Flores*, 108 F.Supp.3d at 130-31.

Still, the addition of the legal permanent resident clause would have been unnecessary if Congress intended that all natural persons should be included within the ambit of the statute.  *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001) (noting courts' "duty to give effect, if possible, to every clause and word of a statute. . . .  We are thus reluctant to treat statutory terms as surplusage in any setting") (internal citations, quotation marks, and brackets omitted)).  Accordingly, if the use of the term "including" connotes an illustrative example, the court must consider what the example is intended to illustrate.  Here consideration of the legislative history provides the answer.

Initially, it should be noted that in amending the statute, Congress gave no apparent thought to how its proposed changes would affect the availability of venue when an alien appeared as plaintiff.  Instead, Congress was concerned particularly with the fact that the then-current iteration of section 1391 allowed an alien to be sued in any district, "thus denying an alien the ability to raise venue as a defense to the location of litigation."  H.R. REP. 112-10, 22-23, 2011 U.S.C.C.A.N. 576, 580 (Feb. 11, 2011).  "[B]y

---

[6]  Thus, for example, in construing the statutory definition of the term "insider" under the Bankruptcy Code, which "includes" certain specifically enumerated persons or entities, the Tenth Circuit concluded the term includes other persons or entities "not listed in the statutory definition, but who have a sufficiently close relationship with the debtor that . . . [their] conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor" also maybe considered insiders."  *In re Kunz*, 489 F.3d 1072, 1079 (10th Cir. 2007) (internal citation and quotation marks omitted).

8

shifting the focus from 'alienage' of a defendant to whether the defendant has his or her 'residence' outside the United States," Congress sought to "permit permanent resident aliens domiciled in the United States to raise a venue defense."  *Id.*[7]

What Congress did make clear, however, was that not all natural persons were covered by the change in the law:

> An alien can obtain a "lawful domicile" in the United States only if he or she has the ability under the immigration laws to form the intent to remain in this country indefinitely.  Such an interpretation of domicile under the venue statute as including lawful intent to remain would foreclose the possibility that an undocumented alien would be regarded as a domiciliary of the United States for venue purposes.

*Id.* at 580 n.16.  Accordingly, as concerns aliens, Congress intended that domicile may be established where the alien has an intent to remain which is consistent with – that is, lawful under – federal immigration law.  *See Coyoy*, 526 F.Supp.2d at 40-41; *Luna*, 2021 WL 673534 at *2.[8]

Thus the question becomes whether an alien in Mr. Fuanya's position can establish a lawful intent to remain in this country.  The government maintains that

---

[7]  Congress also acknowledged that the change also would prevent U.S. citizens domiciled abroad from claiming a venue defense, although they would still be entitled to challenge personal jurisdiction.  2011 U.S.C.C.A.N. at 580

[8]  The government's suggestion that the Federal Circuit's decision in *In re: HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018), *cert. denied*, 139 S.t. 1271 (2019), requires a different result is thoroughly unconvincing.  The court there was asked to consider whether a foreign corporation could mount a venue defense under the patent venue statute, 28 U.S.C. § 1400(b).  (The case was before the circuit court on writ of mandamus challenging the district court's contrary decision.  *Id.* at 1351-52.)  The court there rejected the defendant's argument that the 2011 amendments to section 1391(c)(1) should be imputed to alien corporations, noting that Congress made "only a modest adjustment limited to natural persons" but "did not clearly make – and did not otherwise express an intent to make – a change to the [alien-venue] rule as it affects foreign corporations."  *Id.* at 1358.  The court had no occasion to consider in more depth the question presented here, and thus its otherwise unexamined statement that the change only "granted venue protection to alien natural persons having permanent resident status," *id.* at 1359, was pure dicta.

because Mr. Fuanya's application for asylum was denied and he has been ordered removed, pending appeal, he can hold no such intent.  That argument assumes too much.  The very fact of applying for asylum itself shows Mr. Fuanya intends to remain in this country if his application is granted.[9]  Yet while a grant of release during the pendency of an asylum application does not render Mr. Fuanya admitted to the United States, 8 U.S.C. § 1182(d)(5)(A), he is not considered to be present in this country unlawfully, 8 U.S.C. § 1182(a)(9)(B)(ii).[10]  ***See also Flores***, 108 F.Supp.3d at 129-30.  Thus, while Mr. Fuanya's application remains pending, he can establish an intent to remain which is lawful under immigration law, and thus can establish domicile.  As the uncontroverted evidence demonstrates that Mr. Fuanya intends to remain in Colorado if his application for asylum is granted, venue is proper in this district.

Alternatively, the government seeks a discretionary transfer under section 1404(a).  In undertaking the "individualized, case-by-case consideration of convenience and fairness" required by the statute, ***Stewart Organization, Inc. v. Ricoh Corp***., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (citation and internal quotation marks omitted), the court should consider, *inter alia*,

---

[9]  Of course, if the application is denied, that intent would evanesce.  ***See Coyoy***, 526 F.Supp.3d at 41 n.12.  Nevertheless, the court cannot predetermine the outcome of Mr. Fuanya's appeal but must address the issues raised by and inherent to the motion on the basis of the facts as they presently exist.

[10]  Mr. Fuanya's situation thus is distinguishable from the plaintiff in ***Najera v. United States***, 2016 WL 6877069 (E.D. Va. Nov. 22, 2016), who was admitted on Temporary Protected Status.  Under that rubric, the plaintiff was not "considered to be permanent residing in the United States under color of law," 8 U.S.C. § 1254a(f)(1), but instead was "considered as being in, and maintaining, lawful status as a nonimmigrant," 8 U.S.C. § 1254a(f)(4).  Thus, the plaintiff's right to remain in this country was temporary by definition.  ***See Najera***, 2016 WL 6877069 at *7.  ***See also*** 8 U.S.C. § 1254a(b)(2).  Accordingly, because "[t]here is no pathway from TPS status to lawful permanent resident status or citizenship . . . . TPS status cannot be considered a basis for any lawful intent to stay in the U.S. indefinitely or permanently."  ***Coyoy***, 526 F.Supp.3d at 42 n.13.

> the plaintiff's choice of forum; the accessibility of witnesses
> and other sources of proof, including the availability of
> compulsory process to insure attendance of witnesses; the
> cost of making the necessary proof; questions as to the
> enforceability of a judgment if one is obtained; relative
> advantages and obstacles to a fair trial; difficulties that may
> arise from congested dockets; the possibility of the existence
> of questions arising in the area of conflict of laws; the
> advantage of having a local court determine questions of
> local law; and, all other considerations of a practical nature
> that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516.  Although the government is correct that the

usual bias in favor of a plaintiff's choice of forum does not apply where, as here, the

facts giving rise to the lawsuit have little relation to the chosen forum, *see Employers*

*Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010), I

cannot conclude that the interest of justice warrants a transfer here.

    "The convenience of witnesses is the most important factor in deciding a motion

under § 1404(a)."  *Id*. at 1169 (citation and internal quotation marks omitted).  Yet the

government's mere observation that the five ICE officers implicated by Mr. Fuanya's

allegations are all located in Louisiana falls woefully short of satisfying its heavy burden

to prove that Colorado is an inconvenient forum:

> To demonstrate inconvenience, the movant must (1) identify
> the witnesses and their locations; (2) indicate the quality or
> materiality of their testimony; and (3) show that any such
> witnesses were unwilling to come to trial . . . , that deposition
> testimony would be unsatisfactory, or that the use of
> compulsory process would be necessary.

*Id*. (citation, internal quotation marks, and internal brackets omitted).  The government

has satisfied only the first of these requirements, and while the second might be

presumed, the third clearly is not met.

Although the implicated ICE officers are beyond the subpoena power of this court, the government does not suggest they are not still employed by the agency.  As with employees of a private entity, *see Navajo Nation v. Urban Outfitters, Inc.*, 918 F.Supp.2d 1245, 1257 (D.N.M. 2013); *Meek & Associates, Inc. v. First Union Insurance Group*, 2001 WL 58839 at *4 (D. Kan. Jan. 18, 2001), it is assumed that the government can compel the presence of its officers and agents for trial in any forum, *see Alvarado*, 2017 WL 2303758 at *7; *Flores v. United States*, 142 F.Supp.3d 279, 287 (E.D.N.Y. 2015); *McMechen v. United States*, 2007 WL 433123 at *2 (D. Colo. Feb. 2, 2007).  Likewise, the government has not demonstrated that it cannot compel the attendance at trial of the other potential witnesses it identifies, all of whom facially appear to be employed by or contracted to the government.[11]  By contrast, Mr. Fuanya has no such ability to compel the attendance at a trial in Louisiana of his putative witnesses, including principally his treating doctors.[12]

Nor do the relative costs of litigating favor a transfer here.  At best, this factor is neutral in light of the government's failure to present any specific evidence regarding potential litigation costs.  *See Congo Works, LLC v. Gray & Co., Inc.*, 2019 WL

---

[11]  These include  the nurse who evaluated Mr. Fuanya at the detention center following the assault and officials with knowledge of the facilities various procedures and protocols related to supervision of officers and/or COVID-19 precautions.

[12]  In its reply brief, the government expresses concern that Mr. Fuanya cannot compel the attendance of the government's witnesses.  This argument misapprehends the government's obligation to make such witnesses available for trial.  *See Vega v. Craftworks Restaurants & Breweries Group, Inc*., 2019 WL 6893038 at *5 (D. Colo. Dec. 18, 2019) ("Party witnesses or witnesses who are employed by a party carry no weight in the balance of convenience analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial.") (citation and internal quotation marks omitted).  Moreover, these individuals likely will be deposed, and the government offers nothing to suggest that any testimony given in those circumstances would not be admissible at trial should the witness be unable, for whatever reason, to appear.

12

13036161 at *4-5 (D. Colo. Oct. 10, 2019).[13]  Nor are the government's arguments self-
evident.  As Mr. Fuanya's counsel is located in Louisiana, the Louisiana-based
witnesses may be deposed in their home districts.  To the extent there are costs
associated with providing transportation and lodging for the government's witnesses at
trial, clearly the government is in a better position to bear such costs than a person in
Mr. Fuanya's position.[14]  *See Morrison Construction Co. v. BluRock Concrete, LLC*,
380 F.Supp.3d 1155, 1162 (N.D. Okla. 2019) (transfer which would merely shift costs of
litigation from defendant to plaintiff not warranted); *Walker v. Emergency Staffing
Solutions, Inc.*, 2017 WL 3206333  at *4 (D.N.M. Jan. 20, 2017) (same).

    The government also argues the interests of finality and efficiency will be better
served by a transfer to Louisiana because *if* Mr. Fuanya were to succeed at trial in this
district, and *if* the government were to appeal this court's venue determination, and *if*
the Tenth Circuit were to conclude that venue was not proper in this district, *then* that
decision would void any judgment in Mr. Fuanya's favor.  Given the sheer number of

---

    [13] In general, cost considerations have become increasing less relevant in the modern digital age.
*See Level 3 Communications, LLC v. Beavex Inc.*, 2018 WL 558055 at *5 (D. Colo. Jan. 25, 2018) ("[I]n
this age of videoconferencing and electronic transmission of data, the incidental costs of interstate
litigation can be effectively managed by both sides.").  With respect to trial, this federal district court also
has become particularly adept at the use of technology in the courtroom as part of its efforts to address
the COVID-19 pandemic.

    [14] As the district court in *Coyoy* aptly noted:

    The dispute over these factors reduces to this:

        (a) whether the United States Government, present in every district and
        possessing nearly unlimited resources, should litigate a suit in New Jersey; or

        (b) whether I should require a destitute, grieving refugee from an impoverished
        nation to repeatedly make an 1,800 mile trip from New Jersey to Texas to litigate
        her case.

*Coyoy*, 526 F.Supp.3d at 44-45 (footnote omitted).

13

speculative inferences on which this line of reasoning depends, I would not find it a compelling argument in favor of transfer even if the government's legal arguments were more persuasive than they are.  It appears Mr. Fuanya is willing to bear the risk of the government's imagined scenario, and given both the lack of authority in support of the government's position reagrding venue and the clear weight of authority against it, so am I.

As for the public interest factors, I cannot find these weigh heavily – or very much at all – in favor of transfer.  The statistics to which the government points comparing the relative congestion of the docket of this court to that of the Western District of Louisiana do not show such a vast discrepancy as to suggest that trial will be unduly delayed here as compared to there.  (*See* United States Courts, *Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021)* at 5, 10 (available at: https://www.uscourts.gov/statistics/ table/na/federal-court-management-statistics/2021/06/30-3) (last accessed:  April 4, 2022).)  Indeed, the average number of pending cases per judge is only slightly higher in this district than in the Western District of Louisiana (564 as compared to 525).  On the other hand, the average time from filing to disposition is nearly 30% less in this district (7.8 months versus 10.8 months in Louisiana).  In addition, while this court has only 155 civil cases pending over three years, there are 481 such aging cases in the Western District of Louisiana.  As such older civil cases generally take preference in trial settings, it seems more likely this case would take longer to come to trial in Louisiana than Colorado.

Lastly, the government suggests that a Louisiana court should determine issues of Louisiana law.  While every law student undoubtedly recalls hearing with trepidation the warning "except in Louisiana" at some point in their schooling, the government has made no effort to demonstrate that the concepts of battery, negligence, and intentional infliction of emotional distress under the Louisiana Code are so dissimilar to their common law counterparts that only a Louisiana court would understand them.  To the extent such differences exist, I am confident counsel for both parties will ably illuminate them for the court.

Nor am I convinced that a Louisiana court is best placed to determine in the first instance Mr. Fuanya's "novel" claim that the officers' failure to wear masks, thus exposing him to COVID-19, constitutes negligence.  As Mr. Fuanya notes, Louisiana courts have addressed negligence claims premised on the transmission of communicable diseases in the past.  *See Seaman v. Howard*, 834 So.2d 1288, 1289-91 (La. Ct. App. 2002); *Verdun v. State through Department of Health & Human Resources*, 598 So.2d 1091, 1094-1101 (La. Ct. App. 1992).  Moreover, the interests implicated by this FTCA case involving the treatment of immigrants while in federal detention are not particular to Louisiana but rather resonate nationally.  *See Coyoy*, 526 F.Supp.3d at 47 ("Courts have found that public interests do not warrant a transfer of venue where issues are national in scope.") (citation and internal quotation marks omitted); *Alvarado*, 2017 WL 2303758 at *7 ("Immigration, and the treatment of those who have entered the United States without inspection is a matter of national concern."); *Flores*, 142 F.Supp.3d at 291 ("The alleged mistreatment of plaintiff was by the national government, giving rise to a national interest in the matters to be litigated.").

15

For these reasons, I decline to exercise my discretion to transfer this case under 28 U.S.C. § 1404(a).

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** that **Defendant's Motion To Transfer Venue or, in the Alterative, To Dismiss for Improper Venue** [#21], filed November 30, 2021, is denied.

Dated April 6, 2022, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

16